ERIC H. HOLDER, JR.
Attorney General

JOCELYN SAMUELS
STEVEN H. ROSENBAUM
TIMOTHY J. MORAN
JOEL FLAXMAN
Civil Rights Division
U.S. Department of Justice
    950 Penn. Ave., NW -- NWB
    Washington, DC 20530
    Tel: 202-305-4148
    Fax: 202-514-1116
E-mail: Joel.flaxman@usdoj.gov

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | Civil Action No. 13-4983 |
| Plaintiff, | |
| v. | |
| FRED MARTIN, INDIVIDUALLY AND AS TRUSTEE OF MARTIN FAMILY 2005 TRUST; FATIMA RIVERA; and ALFREDO RIVERA, | |
| Defendants. | |

# COMPLAINT

The United States alleges as follows:

## NATURE OF ACTION

1. This is a civil action brought by the United States to enforce the Fair Housing Act, Title VIII of the Civil Rights Act of 1968, as amended ("FHA"), 42 U.S.C. § 3601 *et seq.* It is brought against Fred Martin, individually and as trustee of Martin Family 2005 Trust; Fatima Rivera; and Alfredo Rivera on behalf of Veronica Panuco and Youcef Aissous and their minor child; Ruby Diaz and Ruben Rodriquez and their minor child; Leticia Baltazar and her two minor children; Araceli Lopez-Porras and Gustavo Porras and their three minor children; Ian Von Deisenroth and Sarah Cameron and their minor child; and Project Sentinel (collectively, "Complainants"), pursuant to 42 U.S.C. § 3612(o). The United States also brings this action against the Defendants pursuant to 42 U.S.C. § 3614(a).

## JURISDICTION, VENUE, AND INTRADISTRICT ASSIGNMENT

2. This court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1345, and 42 U.S.C. §§ 3612(o) and 3614(a).

3. Venue is proper under 28 U.S.C. § 1391(b) because the events or omissions giving rise to the claims alleged herein occurred in this judicial district, and, in particular, in Alameda County, and because two of the three Defendants reside in this judicial district and all of the Defendants reside in the state of California.

## PARTIES AND SUBJECT PROPERTY

4. Woodland Garden Apartments ("Subject Property") is a is a 37-unit apartment complex located at 38771 Bell Street, Fremont, California, 94536, in the Northern District of California. The apartments at Woodland Garden Apartments and the associated public and common use areas are "dwellings" within the meaning of the Fair Housing Act, 42 U.S.C. § 3602(b).

5. Defendant Fred Martin is the trustee of Defendant Martin Family 2005 Trust, which owns and does business under the name "Woodland Gardens Apartments." At all times relevant to the

Complaint 1

Complaint, Defendant Martin has been responsible for the overall management and operation of Woodland Garden Apartments, including the hiring and supervising of employees who work at Woodland Garden Apartments and establishing the rules governing residency at Woodland Garden Apartments. Defendant Martin resides in the Eastern District of California.

6. Starting in 2008 and continuing to the present, Defendant Fatima Rivera ("F. Rivera") has been the resident manager at Woodland Garden Apartments. As resident manager, Defendant F. Rivera has been responsible for the day to day management of Woodland Garden Apartments, including the enforcement of rules governing residency at Woodland Garden Apartments. Defendant F. Rivera resides at Woodland Garden Apartments in the Northern District of California.

7. Starting in 2008 and continuing through November 2012, Defendant Alfredo Rivera ("A. Rivera") worked as maintenance staff for Woodland Garden Apartments. Defendant A. Rivera resides at Woodland Garden Apartments in the Northern District of California.

8. Starting in November 2010 and continuing to the present, Complainants Veronica Panuco and Youcef Aissous have lived at Woodland Garden Apartments with their minor child. Complainants Panuco and Assious and their minor child are "aggrieved persons" as defined in 42 U.S.C. § 3602(i).

9. Starting in April 2011 and continuing through all times relevant to the Complaint, Complainants Ruby Diaz and Ruben Rodriquez lived at Woodland Garden Apartments with their minor child. Complainants Diaz and Rodriguez and their minor child are "aggrieved persons" as defined in 42 U.S.C. § 3602(i).

10. Starting in January 2009 and continuing to the present, Complainant Leticia Baltazar has lived at Woodland Garden Apartments with her two minor children. Complainant Baltazar and her minor children are "aggrieved persons" as defined in 42 U.S.C. § 3602(i).

11. Starting in May 2011 and continuing to the present, Complainants Araceli Lopez-Porras and Gustavo Porras have lived at Woodland Garden Apartments with their three minor children.

Complainants Lopez-Porras and Porras are "aggrieved persons" as defined in 42 U.S.C. § 3602(i).

12. Starting in October 2010 and continuing through all times relevant to the Complaint, Complainants Ian Von Deisenroth and Sarah Cameron lived at Woodland Garden Apartments with their minor child. Complainants Von Deisenroth and Cameron and their minor child are "aggrieved persons" as defined in 42 U.S.C. § 3602(i).

13. Complainant Project Sentinel is a non-profit organization that works to ensure fair housing in the California Bay Area and Central Valley. Complainant Project Sentinel is an "aggrieved person" as defined in 42 U.S.C. § 3602(i).

## FACTUAL ALLEGATIONS

14. The apartment buildings at Woodland Garden Apartments are arranged around a central courtyard that consists of two grassy areas and a fenced-in pool. This courtyard is a common area of the Subject Property, accessible to all residents, including children. Until the Defendants' actions described in the paragraphs below, resident children regularly played in the grassy areas of the courtyard.

15. Starting in or around 2009, Defendant F. Rivera began requiring that tenants sign an addendum to their leases entitled "Rules for Children," which states thirteen rules restricting the activity of children at the Subject Property and which further states, "[i]f these rules are not followed children will not be allowed outside without adult supervision" and that "[t]hese rules may be expanded upon if necessary." The Rules for Children do not specifically address children's use of the courtyard.

16. On various occasions since 2010, Defendants F. Rivera and A. Rivera made statements restricting children's ability to play in the common areas of the Subject Property, including the courtyard, sometimes citing the Rules for Children.

17. On September 12, 2012, Defendant F. Rivera issued a letter to tenants entitled "Unsupervise [sic] Children" stating, in part, "From now on NO kids or guest kids are Allowed Outside. I tried to be Flexible and Allowed the children to play, But my plants got destroy [sic], rocks in the pool

Complaint 3

& dirt, sprinklers broken, Tree branches broken, grass damage. There is no PlayGround on this property. Please take sometime [sic] to take the children to the park, If [sic] our Instructions aren't Followed we will have to Move you out."

18. From September 2012 through October 2012, Defendants F. Rivera and A. Rivera enforced the "Unsupervise Children" letter by warning parents that they could face eviction if their children were outside at the Subject Property.

19. Following receipt of the "Unsupervise Children" letter, Complainants Panuco and Aissous, Diaz and Rodriguez, Baltazar, Lopez-Porras and Porras, and Von Deisenroth and Cameron largely stopped allowing their minor children to play outside, even under adult supervision, for fear of eviction.

20. The policies established by the Rules for Children document and the "Unsupervise Children" letter continued to be in effect until Defendant Martin issued a letter to all tenants revoking these policies on November 19, 2012, approximately three weeks after the first complaint was filed in this matter with the United States Department of Housing and Urban Development ("HUD").

### Complainants Veronica Panuco and Youcef Aissous and their minor child

21. On September 12, 2012, Defendant F. Rivera gave Complainant Assious the "Unsupervise Children" letter and told him that children could not play outside, that anyone unhappy with this rule could leave, and that if children would need to go to the playground to play outside because the Subject Property was a place for peace and quiet. Mr. Assious asked if the rule meant that if children were at the apartment then they had to be inside at all times and Defendant F. Rivera answered yes.

22. Following receipt of the "Unsupervise Children" letter, Complainants Panuco and Aissous, largely stopped allowing their minor child to play outside, even under adult supervision, for fear of eviction, and instead took him elsewhere to play.

Complaint            4

### Complainants Ruby Diaz and Ruben Rodriguez and their minor child

23. In or around April 2011 when Complaints Diaz and Rodriguez signed the lease for their apartment at the Subject Property, Defendant Fatima Rivera told Ms. Diaz that her children would need to be supervised.

24. In or around August 2012, Ms. Diaz and Mr. Rodriguez received a notice on their door stating that no children were allowed to play outside at the complex without adult supervision, along with a copy of the Rules for Children document.

25. On or about September 12, 2012, Defendant F. Rivera gave Ms. Diaz and Mr. Rodriguez the "Unsupervise Children" letter.

26. Following receipt of the "Unsupervise Children" letter, Complainants Diaz and Rodriguez largely stopped allowing their minor child to play outside, even under adult supervision, for fear of eviction, and instead took her elsewhere to play.

### Complainant Leticia Baltazar and her two minor children

27. During the summer of 2010, Defendant A. Rivera approached Ms. Baltazar and her son, who was playing in the grass, and stated, "don't play on the grass, the kids will break the sprinklers." Defendant A. Rivera also told Ms. Baltazar, "If the owner finds out, he will kick you out."

28. Following the incident referenced in Paragraph 27 above, Ms. Baltazar temporarily stopped allowing her children to play in the courtyard, for fear of eviction.

29. In or around August 2012, Defendant A. Rivera approached Complainant Baltazar's children while they were playing on the grass and told them not to play in the planted areas and that "it is in your contract." Ms. Baltazar responded that it was not in her contract. The following day, the Rules for Children document was taped to Ms. Baltazar's apartment door. The next day, a copy of the lease was posted on the door with a note attached, stating, "here is a copy of the rental agreement & terms you have violated."

30. On or about September 12, 2012 Defendant F. Rivera gave Ms. Baltazar the "Unsupervise Children" letter and stated that Ms. Baltazar's children were not allowed to play outside and that if they did they would be asked to move out.

31. Following receipt of the "Unsupervise Children" letter, Complainant Baltazar, largely stopped allowing her minor children to play outside, even under adult supervision, for fear of eviction. Ms Baltazar also began looking for another place to live.

32. Starting on or about September 13, 2012, Complainant Baltazar called Defendant Martin multiple times, leaving him two messages, to discuss Defendant F. Rivera's new rules. Ms. Baltazar received no response from Defendant Martin.

<u>Complainants Araceli Lopez-Porras and Gustavo Porras and their three minor children</u>

33. During the summer of 2012, Defendant Fatima Rivera gave Ms. Lopez-Porras and her children a verbal warning that her children could not play with their scooters on the walkway and that the children needed to go inside or play only in the parking lot.

34. Following the incident referenced in Paragraph 33 above, Ms. Lopez-Porras and Mr. Porras generally did not allow their children to ride their bikes and scooters on the walkway, allowing them only to play in the parking lot under adult supervision, for fear of eviction.

35. In or around August 2012, a copy of the Rules for Children document was posted on Ms. Lopez-Porras and Mr. Porras' apartment door.

36. On or about September 12, 2012, the "Unsupervise Children" letter was posted on Ms. Lopez-Porras and Mr. Porras' apartment door.

37. Following receipt of the "Unsupervise Children" letter, Complainants Lopez-Porras and Porras largely stopped allowing their minor children to play outside, even under adult supervision, for fear of eviction, and instead took them elsewhere to play.

<u>Complainants Ian Von Deisenroth and Sarah Cameron and their minor child</u>

Complaint 6

38. Before Complainants Von Deisenroth and Cameron moved into their apartment at the Subject Property, Defendant F. Rivera told Ms. Cameron that the Subject Property had a rule that children could not have toys outside.

39. In or around May 2012, Defendant A. Rivera approached Mr. Von Deisenroth when he was outside with his son and told him, "No kids are allowed to play outside in the complex area."

40. Following the incident referenced in Paragraph 39 above, Mr. Von Deisenroth felt threatened and began taking his son elsewhere to play.

41. On or about September 12, 2012, the "Unsupervise Children" letter and the Rules for Children document were posted on Mr. Von Deisenroth and Ms. Cameron's apartment door.

42. Following receipt of the "Unsupervise Children" letter, Mr. Von Deisenroth and Ms. Cameron continued to take their son elsewhere to play, for fear of eviction.

43. In or around October 2012, Defendant A. Rivera approached Mr. Von Deisenroth while his son was playing outside and Mr. Rivera told him, "kids can't play outside."

44. In or around October 2012, while Mr. Von Deisenroth was walking with his son to the laundry room, Defendants A. Rivera and F. Rivera approached him and Defendant A. Rivera said, "I clearly stated last time that kids can't play on the complex."

45. Following the incident referenced in Paragraph 44 above, Complainants Von Deisenroth and Cameron largely stopped allowing their minor child to play outside, even under adult supervision, for fear of eviction, and instead took him elsewhere to play.

<u>Complainant Project Sentinel</u>

46. Complainant Project Sentinel is a non-profit corporation that provides housing counseling, education, and outreach in the California Bay Area and Central Valley. Project Sentinel's mission is to develop and promote fairness and equality of housing for all persons and to advocate peaceful resolution of disputes for community welfare and harmony.

47. On or about September 17, 2012, Complainants Ruby Diaz and Leticia Baltazar contacted Complainant Project Sentinel regarding the overly restrictive rules for children that Defendants had implemented at Woodland Garden Apartments.

48. Following the calls referenced in Paragraph 47 above, Complainant Project Sentinel began an investigation of the Defendants' rules and policies, conducted outreach at Woodland Garden Apartments and in-depth interviews with tenants, and assisted tenants in filing and maintaining their complaints with the HUD.

49. As a result of the Defendants' conduct alleged above, Complainant Project Sentinel has suffered damages, including economic loss due to diversion of resources and frustration of Project Sentinel's mission to ensure equal housing opportunity for California Bay Area and Central Valley residents.

## HUD Administrative Process

50. On October 25, 2012, Complainant Project Sentinel timely filed a housing discrimination complaint with HUD, pursuant to the Fair Housing Act, 42 U.S.C. §3610(a), alleging that Respondents Martin, Fred R. Trust; Fatima Rivera, and Fernando Rivera had discriminated on the basis of familial status.

51. On November 1, 2012, Complainants Panuco and Aissous and Complainants Lopez-Porras and Porras timely filed housing discrimination complaints with HUD, pursuant to the Fair Housing Act, 42 U.S.C. §3610(a), alleging that Respondents Martin, Fred R. Trust; Fatima Rivera, and Fernando Rivera discriminated against them and their minor children on the basis of familial status.

52. On November 2, 2012, Complainants Diaz and Rodriguez and Complainant Baltazar timely filed housing discrimination complaints with HUD, pursuant to the Fair Housing Act, 42 U.S.C. §3610(a), alleging that Respondents Martin, Fred R. Trust; Fatima Rivera, and Fernando Rivera discriminated against them and their minor children on the basis of familial status.

53. On March 20, 2013, the previously filed HUD complaints were amended to correct the name of Respondent Alfredo Rivera, previously named as Fernando Rivera.

54. On March 25, 2013, Complainants Von Deisenroth and Cameron filed a housing discrimination complaint with HUD, pursuant to the Fair Housing Act, 42 U.S.C. §3610(a), alleging that Respondents Martin, Fred R. Trust; Fatima Rivera, and Alfredo Rivera discriminated against them and their minor children on the basis of familial status.

55. On July 8, 2013, the HUD complaints were amended to name Respondents Fred Martin and Martin Family 2005 Trust, also known as Martin Family 2005 Living Trust; Martin Family Trust, Fred Martin; and Martin, Fred R. Trust, doing business as Woodland Garden Apartments.

56. Pursuant to 42 U.S.C. § 3610(a) and (b), the Secretary of HUD conducted and completed an investigation of the complaints, attempted conciliation without success, and prepared final investigative reports. Based on the information gathered in the investigation, the Secretary determined, pursuant to 42 U.S.C. § 3610(g)(1), that reasonable cause existed to believe that illegal discriminatory housing practices had occurred, including violations of 42 U.S.C. §§ 3604(b) and (c). Therefore, on September 19, 2013, the Secretary issued a Charge of Discrimination, pursuant to 42 U.S.C. § 3610(g)(2)(A), charging the Defendants with engaging in discriminatory practices on the basis of familial status in violation of the Fair Housing Act, specifically 42 U.S.C. §§ 3604(b) and (c).

57. On September 25, 2013, Complainant Project Sentinel elected to have the claims asserted in HUD's Charge of Discrimination resolved in a civil action, pursuant to 42 U.S.C. § 3612(a).

58. On September 25, 2013, the Administrative Law Judge presiding over the administrative proceeding issued a Notice of Election to Proceed in United States District Court and terminated the administrative proceeding.

59. Following this Notice of Election, the Secretary of HUD authorized the Attorney General to commence a civil action, pursuant to 42 U.S.C. § 3612(o).

Complaint 9

## FIRST CLAIM FOR RELIEF

60. Plaintiff re-alleges and incorporates by reference the allegations set forth in Paragraphs 1-59.

61. By their conduct described above, the Defendants have:

   a. Imposed terms, conditions, or privileges of sale or rental of a dwelling because of familial status, in violation of 42 U.S.C. § 3604(b); and

   b. Made statements with respect to the rental of a dwelling that indicated a preference, limitation, or discrimination based on familial status, or an intention to make any such preference, limitation, or discrimination, in violation of 42 U.S.C. § 3604(c).

62. Complainants Veronica Panuco and Youcef Aissous and their minor child, Ruby Diaz and Ruben Rodriquez and their minor child, Leticia Baltazar and her two minor children, Araceli Lopez-Porras and Gustavo Porras and their three minor children, Ian Von Deisenroth and Sarah Cameron and their minor child, and Project Sentinel have all suffered damages as a result of Defendants' conduct.

63. The Defendants' conduct was intentional, willful, and taken in disregard for the rights of others.

## SECOND CLAIM FOR RELIEF

64. Plaintiff re-alleges and incorporates by reference the allegations set forth in Paragraphs 1-63.

65. The Defendants' conduct described above constitutes:

   a. A pattern or practice of resistance to the full enjoyment of rights granted by the Fair Housing Act, 42 U.S.C. §§ 3601-3631, in violation of 42 U.S.C. § 3614(a); or

   b. A denial to a group of persons of rights granted by the Fair Housing Act, 42 U.S.C. §§ 3601-3631, which raises an issue of general public importance, in violation of 42 U.S.C. § 3614(a).

66. In addition to the Complainants and their minor children, there are other victims of the

Defendants' discriminatory housing practices who are "aggrieved persons" as defined in 42 U.S.C. § 3602(i), and who may have suffered injuries as a result of the conduct described above.

## PRAYER FOR RELIEF

WHEREFORE, the United States prays that the Court enter an order that:

1. Declares that Defendants' discriminatory policies and practices, as set forth above, violate the Fair Housing Act, 42 U.S.C. § 3601 *et seq.*;

2. Declares that Defendants have engaged in a pattern or practice of discrimination in violation of the Fair Housing Act, or have denied rights guaranteed under the Fair Housing Act to a group of persons, which denial raises an issue of general public importance;

3. Enjoins Defendants, their representatives, agents, employees, successors, and all others in active concert or participation with any of them from:

    (a) Discriminating against any person on the basis of familial status in violation of the Fair Housing Act in any aspect of the rental of a dwelling;

    (b) Failing or refusing to take such affirmative steps as may be necessary to restore, as nearly as practicable, the victims of the Defendants' unlawful practices to the position they would have been in but for the discriminatory conduct; and

    (c) Failing or refusing to take such affirmative steps as may be necessary to prevent the recurrence of any discriminatory conduct in the future and to eliminate, to the extent practicable, the effects of the Defendants' unlawful practices.

4. Awards such monetary damages, pursuant to 42 U.S.C. §§ 3612(o)(3), 3613(c)(1), and 3614(d)(1)(B), as would fully compensate each identifiable victim harmed by defendants' discriminatory practices; and

5. Assesses civil penalties against Defendants to vindicate the public interest, pursuant to 42 U.S.C. § 3614(d)(1)(C).

The United States further prays for such additional relief as the interests of justice may require.

Dated: October 25th, 2013.

ERIC H. HOLDER, JR.
Attorney General

*/s/ Jocelyn Samuels*
JOCELYN SAMUELS
Acting Assistant Attorney General
Civil Rights Division

*/s/ Steven H. Rosenbaum*
STEVEN H. ROSENBAUM
Chief, Housing and Civil
Enforcement Section

*/s/ Joel Flaxman/TJM*
TIMOTHY J. MORAN
Deputy Chief
JOEL FLAXMAN
Trial Attorney
Housing and Civil Enforcement Section
Civil Rights Division
U.S. Department of Justice
950 Penn. Ave., NW -- NWB
Washington, DC 20530
Tel: 202-305-4148
Fax: 202-514-1116
E-mail: Joel.flaxman@usdoj.gov

Complaint 12